Vincent MORELLO, Plaintiff,

v.

Charles JAMES, Superintendent of the Collins Correctional Facility, Corrections Officer J. Nowakawski, and Thomas Coughlin, III, Commissioner of the New York State Department of Correctional Services, Defendants.

Vincent MORELLO, Plaintiff,

v.

Harold J. SMITH, Superintendent of the Attica Correctional Facility, Commissioner Thomas Coughlin, III, and Unknown Correctional Officers, Defendants.

Nos. CIV–85–1430T, CIV–85–1454T.

United States District Court,
W.D. New York.

Feb. 19, 1986.

Vincent Morello, pro se.

Robert Abrams, Atty. Gen. of State of N.Y., Albany, N.Y. (Charles D. Steinman, Asst. Atty. Gen., Rochester, N.Y., of counsel), for defendants.

## DECISION AND ORDER

TELESCA, District Judge.

These two civil rights actions present a question of recurring concern for federal district courts: Does the doctrine of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), bar a federal civil rights action for the theft or destruction of a prisoner's legal materials by correctional officers when the State provides an adequate post-deprivation remedy?

## BACKGROUND

In these two *pro se* civil rights actions, which are consolidated for the purposes of this decision,[1] Vincent Morello alleges the following facts.[2] In the early morning of November 6, 1983, while Morello was incarcerated at the Collins Correctional Facility, he completed work on a brief for an appeal he had pending before the Appellate Division of the New York Supreme Court, Fourth Department. Later that day, before his appellate brief could be notarized, Morello was segregated from the general

---

1. The two complaints filed by Morello in these actions are nearly identical. The statement of claim, the requested relief, and the attached exhibits in each are verbatim replicas of one another. The only difference between the two complaints is that CIV–85–1430T was brought against officials responsible for the Collins Correctional Facility, and CIV–85–1454T was brought against officials responsible for the Attica Correctional Facility.

2. The following statement of facts is compiled from Morello's "Statement of Claim" and the exhibits attached to his complaint, including copies of letters written by him to State officials. In light of Morello's *pro se* status, this Court is obligated to read his complaint as adopting the factual allegations in those exhibits. *LeGrand v. Evan,* 702 F.2d 415, 416 n. 3 (2d Cir.1983).

population and placed in confinement. All of his property was "packed up," and placed in another room by Corrections Officer Nowakawski.

The following day, Morello was transferred to the Attica Correctional Facility. He did not receive any of his personal belongings until six days later, on November 13, 1983. When Morello's property was finally turned over to him, two of his eleven legal folders were missing. At some point during his transfer from Collins to Attica, Morello alleges that as yet unidentified correctional officers searched his bags, and arbitrarily stole various items of his personal property, including his appellate briefs and records of a phone call made by his attorney to the Niagara Falls police. Also taken were all of his notes, research materials, and rough draft worksheets. Morello alleges that the loss caused him irreparable harm in perfecting his appeal, since he had received legal assistance in the preparation of his appellate brief that could not be replaced.

Morello's complaint, brought pursuant to 42 U.S.C. § 1983, seeks punitive and compensatory damages, as well as other appropriate relief, for the "theft and removal" of his appellate *pro se* brief and research.

Presently pending before me is a motion by the defendant prison officials to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.[3] Defendants cite *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) for the proposi-

tion that the intentional or negligent deprivation of a prisoner's property does not violate the prisoner's constitutional rights where adequate post-deprivation remedies exist under State law.

## DISCUSSION

It is by now familiar ground that *pro se* complaints must be liberally construed, and should not be held to as rigorous a standard as formal pleadings prepared by an attorney. *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980); *Salahuddin v. Coughlin*, 781 F.2d 24, 28 (2d Cir.1986). When subjected to such a liberal construction, Morello's complaint may be fairly read as asserting two distinct constitutional claims. First, as the defendants' argument implicitly acknowledges, Morello's statement of facts may be interpreted as asserting a claim that he was deprived of property without due process of law, in violation of the Fourteenth Amendment to the United States Constitution. In addition, Morello's *pro se* complaint can also be reasonably read to allege that State prison officials intentionally violated his constitutional right of reasonable access to the courts. *See Washington v. James*, 782 F.2d 1134, 1138–39 (2d Cir. 1986). Nevertheless, defendants argue that dismissal of the entire complaint is compelled under the authority of *Parratt v. Taylor* and its progeny,[4] since the State of New York provides adequate post-deprivation remedies for the destruction of Morello's legal materials. For the reasons that follow, I am compelled to accept the defendants' position, despite serious misgiv-

---

**3.** In the alternative, defendants also move for summary judgment pursuant to Fed.R.Civ.P. 56. I decline to treat the motion as one for summary judgment, however, since it is not supported by any affidavits or evidence beyond the pleadings, and is clearly directed only to the sufficiency of plaintiff's allegations on their face. *See* Fed.R.Civ.P. 12(c).

**4.** *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) explicated the requirements of procedural due process in a case involving the negligent destruction of a prisoner's personal property. The *Parratt* holding was later extended to cover intentional destruction of

property in *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), and subsequently confined to deprivations involving something more than mere negligence in *Daniels v. Williams,* —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). (There is no question that Morello's complaint is not barred by the Supreme Court's recent decision in *Daniels,* since defendants concede in their memorandum of law that this complaint may be interpreted as alleging that his property was intentionally destroyed.)

Throughout this decision, I mean by "the *Parratt* doctrine" to refer to the foregoing trilogy of cases.

ings, by controlling Second Circuit authority.

After careful consideration, this Court is constrained to grant defendants' motion on the authority of *Love v. Coughlin*, 714 F.2d 207 (2d Cir.1983) (per curiam), a case which is virtually indistinguishable from the factual and legal issues presented by Morello's complaint. The plaintiff in that case, John Love, Jr., filed a *pro se* civil rights complaint concerning the loss of two of his three duffel bags during a transfer within the New York State prison system. The bags allegedly contained various items of personal belongings, including legal documents and communications pertaining to four civil and two criminal lawsuits. Love sought compensatory and punitive damages from State correctional officers [5] for failing to safeguard his property from theft or loss. The plaintiff in that case specifically alleged a claim of "interference with his access to the courts," and emphasized that the theft or loss of prisoners' property was a "recurring" problem. *Id.* at 208.

Despite Love's allegations of ongoing interference with his access to the courts, the Second Circuit Court of Appeals held that dismissal of the entire complaint was required by *Parratt*, which it cited for the general proposition that "no civil rights action lies" for the deprivation of a prison inmate's "personal belongings" by correctional officers, if the State provides an adequate compensatory remedy. *Id.* at 208–209. By clear implication, the court rejected without discussion the plaintiff's argument that *Parratt* should not apply to the theft or loss of his legal materials, and the concomitant obstruction of his access to the courts. Indeed, the Court of Appeals held that the inmate's pleadings, liberally construed, were so "clearly foreclose[d]" by *Parratt* that the District Court properly dismissed the complaint *sua sponte* without service of process upon the named defendants.[6] *Id.*

The factual background and legal issues which were presented in the *Love* case simply cannot be distinguished in any meaningful way from the case now before me.[7] On the authority of that controlling Second Circuit precedent, therefore, this Court is bound by the doctrine of *stare decisis* to accept defendants' position that Morello's complaint, liberally construed, is foreclosed by the *Parratt* doctrine, since New York State provides adequate post-deprivation remedies in the Court of Claims. Accordingly, like the Court of Appeals in *Love*, I need not decide whether this prisoner complaint has alleged facts which would otherwise be adequate to establish an actionable violation of his constitutional right of reasonable access to the courts.

Although *Love* still retains its vitality as controlling authority within this Circuit, its reasoning is in need of re-examination, since it rests on the questionable assumption that *Parratt* is generally applicable to the deprivation of any of a prisoner's "per-

---

**5.** The plaintiff in *Love* sued virtually the same cast of characters named as defendants by Morello: Commissioner Thomas Coughlin, the Superintendent of the correctional facility where he was transferred, and assorted known and unknown correctional officers involved with the transfer.

**6.** The reasoning of the *Love* decision therefore applies with even greater force to the instant Rule 12(b)(6) dismissal motion, since the defendants in this case have been served, and this Court has the benefit of their answering papers. *See Massop v. Coughlin*, 770 F.2d 299, 301 (2d Cir.1985); *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir.1983); *Bayron v. Trudeau*, 702 F.2d 43, 46 (2d Cir.1983).

**7.** Indeed, in at least two significant respects, the inmate's allegations presented an even stronger case than this one. The prisoner in *Love*, unlike Morello, explicitly alleged that he had been deprived of legal materials pertaining to six different lawsuits, and that he faced a continuing threat of theft or loss. For those reasons as well, the *Love* holding applies with even greater force here. *See also*, n. 6, *infra*.

The only other difference between the two cases is the fact that the prisoner in *Love* apparently alleged only that his legal materials were lost through "negligent conduct," while Morello alleges that his property was intentionally searched and stolen. That distinction is entirely immaterial to the applicability of the *Parratt* doctrine since the Supreme Court's later holding in *Hudson, supra*.

sonal belongings," including papers pertaining to judicial proceedings.

From a constitutional perspective, all property is not created equal. The *Parratt* case, for example, involved the loss of a prisoner's mail order hobby kit. Since no substantive constitutional rights are implicated by the deprivation of a prisoner's hobby materials *per se*, the only constitutional issue before the court in *Parratt* was whether the inmate had been deprived of property "without due process of law," in violation of the Fourteenth Amendment. *Id.*, 451 U.S. at 536–37, 101 S.Ct. at 1913–14. There are certain other types of "personal belongings," however, which a prisoner is entitled to possess by virtue of specific substantive constitutional guarantees. For example, the Free Exercise Clause of the First Amendment protects a prisoner's possession of personal property relating to religious observance, such as a Bible or a crucifix. *Hudson, supra*, 104 S.Ct. at 3211 n. 13 (Stevens, J., concurring in part and dissenting in part). Since the mere possession of this type of personal property is constitutionally protected, its intentional destruction or deprivation by State officials (if unaccompanied by a compelling justification) is itself a violation of a substantive constitutional right, regardless of what "procedural" protections are provided before or after the deprivation.

It is clearly settled that a prisoner's legal material and papers are among the types of personal property entitled to substantive due process protection.[8] As a corollary of the First Amendment right "to petition the Government for a redress of grievances," U.S. Constitution Amendment 1, prisoners have a constitutional right of reasonable access to the courts, a right prison officials cannot unreasonably obstruct and that states have affirmative obligations to protect. *Hudson v. Palmer, supra*, 104 S.Ct. at 3198; *Bounds v. Smith*, 430 U.S. 817, 821–23, 97 S.Ct. 1491, 1494–95, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); *Washington v. James*, 782 F.2d 1134, 1138–39 (2d Cir.1986); *Chandler v. Coughlin*, 763 F.2d 110, 114 (2d Cir.1985).[9] In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff need only allege, as Morello apparently has here, that prison officials acting under color of State law denied or obstructed his right to present his claims to the courts. *Johnson, supra*, 393 U.S. at 485, 89 S.Ct. at 748; *Washington, supra*, at 1138. Even before the Second Circuit's decision in *Love*, it was settled that prison authorities may not interfere with this constitutional right by confiscating a prisoner's legal books. *Bayron v. Trudeau*, 702 F.2d 43, 45–6 n. 3 (2d Cir.1983) (citing *Corby v. Conboy*, 457 F.2d 251 (2d Cir.1972)).

Since the prisoner in *Parratt* alleged only that he had been deprived of property without due process of law, and could claim no other constitutional right to hobby kit

---

**8.** This point was made explicitly by Justice Stevens, joined by three other justices and without contradiction by the majority opinion, in *Hudson v. Palmer*. While dissenting on other grounds, four members of the court noted that the alleged deprivation in that case of a prisoner's personal belongings—including "legal materials"—implicated his substantive constitutional right to "reasonable access to legal materials as a corollary of the constitutional right of access to the courts." *Id.*, 104 S.Ct. at 3208 n. 3, 3211 (dissenting opinion).

Although the inmate in *Hudson* had originally alleged a claim of infringement of his right of access to the courts by the destruction of his legal materials, that claim was dismissed on the merits by the Court of Appeals below. *Palmer v. Hudson*, 697 F.2d 1220, 1221 n. 1 (4th Cir. 1983). That dismissal of the inmate's "access to the courts" claim was not raised in his cross

petition for a writ of certiorari, and so the Supreme Court decided only whether the alleged property deprivation constituted "a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment." *Id.*, 104 S.Ct. at 3204.

**9.** In *Washington* and *Chandler*, the Second Circuit Court of Appeals has recently reaffirmed its disfavor for the hasty dismissal of *pro se* civil rights complaints which can reasonably be read to allege an interference with a prisoner's right of access to the courts. Nevertheless, neither of those opinions can be responsibly interpreted as overruling the *Love* decision. Both of those recent cases only involved the threshold pleading requirements to state a claim for violation of the right of access to the courts; neither case discussed the possible applicability of the *Parratt* doctrine to such claims.

materials, the *Parratt* opinion only specifies those conditions under which post-deprivation State remedies will "satisfy the requirements of *procedural* due process." *Id.*, 451 U.S. at 537, 539, 101 S.Ct. at 1914 (emphasis added).[10] By its own terms, therefore, the logic of the *Parratt* doctrine is simply inapplicable to alleged violations of *substantive* constitutional protections of the Bill of Rights, made applicable to the States by the Due Process Clause of the Fourteenth Amendment. Although the Supreme Court has not yet made that point explicit,[11] every Circuit Court of Appeals but the D.C. Circuit has decided, at least by way of dictum, that *Parratt* is irrelevant to an alleged violation of some substantive constitutional proscription. *Riley v. Jeffes,* 777 F.2d 143 (3d Cir.1985); *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1499 (11th Cir. 1985) (*en banc*); *Robins v. Harum,* 773 F.2d 1004, 1009 (9th Cir.1985); *O'Quinn v. Manuel,* 773 F.2d 605, 608 (5th Cir.1985); *Gumz v. Morrissette,* 772 F.2d 1395, 1400 n. 3 (7th Cir.1985); *Pruitt v. City of Montgomery,* 771 F.2d 1475, 1484–85 n. 19 (11th Cir.1985) (*en banc*); *Wilson v. Beebe,* 770 F.2d 578, 585 (6th Cir.1985) (*en banc*); *L & H Sanitation v. Lake City Sanitation,* 769 F.2d 517, 523–24 (8th Cir.1985); *Lavicky v. Burnett,* 758 F.2d 468, 472 n. 1 (10th Cir. 1985); *Davidson v. O'Lone,* 752 F.2d 817, 825 (3d Cir.1984) (*en banc*), *aff'd sub. nom. on other grounds, Davidson v. Cannon,* — U.S. —, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Augustine v. Doe,* 740 F.2d 322, 325–27 (5th Cir.1984); *Daniels v. Williams,* 720 F.2d 792, 796 n. 3 (4th Cir.1983), *aff'd on rehearing,* 748 F.2d 229 (4th Cir.1984)

(*en banc*), *aff'd on other grounds,* — U.S. —, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 832 n. 9 (1st Cir.1982), *cert. denied,* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982).[12]

The foregoing principles were recently applied to the destruction of prisoner property in *Hall v. Sutton,* 755 F.2d 786 (11th Cir.1985). The Eleventh Circuit held in that case that *Parratt* barred a prisoner's claim that his undershorts were confiscated without due process of law, since Alabama provided adequate remedies for the alleged property deprivation. The Court also held, however, that the District Court had improperly relied on *Parratt* to dismiss the inmate's claim that the same prison officials confiscated his tennis shoes in retaliation for past litigation. Since the retaliation assertion implicated the inmate's substantive constitutional right to meaningful access to the courts, the Court of Appeals held that the deprivation of the tennis shoes was "no longer a mere due process claim," and thus was not barred by *Parratt* and the availability of state remedies. *Id.,* at 787–88.

On the basis of the reasoning set forth above in this decision, I am in complete agreement with the Eleventh Circuit's holding in *Hall* that *Parratt* is entirely inapplicable to a prisoner's claim that the destruction of his personal belongings has in some way obstructed his right to present his grievances to the courts. Nevertheless, I am obligated to follow the contrary holding of the Court of Appeals from this Circuit in

10. Similarly, for the reasons described *infra,* n. 8, the Supreme Court's later decision in *Hudson* only addressed the implications of post-deprivation remedies for "the *procedural* requirements of the Due Process Clause of the Fourteenth Amendment." *Id.,* 104 S.Ct. at 3204 (emphasis added).

11. While dissenting on other grounds, four Supreme Court justices stated in dictum, without contradiction from the Court majority, that *Parratt* does not "apply to conduct that violates a substantive constitutional right." *Hudson, supra,* 104 S.Ct. at 3208 n. 4 (Stevens, J. concurring in part and dissenting in part, joined by Justices Brennan, Marshall and Blackmun).

12. By clear implication, the Second Circuit Court of Appeals recently made the same point for the first time, albeit in dictum, in *Signet Construction Corp. v. Borg,* 775 F.2d 486 (2d Cir.1985). The Court noted that adequate state post-deprivation remedies may satisfy a person's "*procedural* due process rights" under the *Parratt* doctrine, but added that "[t]he relevance of state remedies for this limited purpose does not impinge upon the rule that exhaustion of state remedies is not a prerequisite to a § 1983 suit." *Id.,* at 489, 490 (emphasis added) (dictum).

*Love.* "The doctrine of *stare decisis* compels district courts to adhere to a decision of the Court of Appeals of their Circuit until such time as the Court of Appeals or the Supreme Court of the United States sees fit to overrule the decision." *Burroughs v. Holiday Inn*, 621 F.Supp. 351, 354 (W.D.N.Y.1985), (quoting *Owens-Illinois, Inc. v. Aetna Casualty and Surety Company*, 597 F.Supp. 1515, 1520 (D.C.D.C.1984)). *Accord, Ithaca College v. N.L.R.B.*, 623 F.2d 224, 228 (2d Cir.1980), *cert. denied*, 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980); *1B Moore's Federal Practice*, ¶ 0.402[1] at 12–14. Although the holding of *Love v. Coughlin* appears to be worthy of careful reconsideration and possible modification, that privilege is one which rests with the Court of Appeals.[13]

### CONCLUSION

Morello's complaint, to the extent that it alleges a claim that he was deprived of his property without due process of law, is clearly foreclosed by *Parratt v. Taylor* and *Hudson v. Palmer*, since the State of New York provides a meaningful post-deprivation remedy in the Court of Claims. Although the complaint may also reasonably be read to allege a claim of interference with his access to the courts, that claim is also barred by the Second Circuit's extension of the *Parratt* doctrine in *Love v. Coughlin*. Accordingly, the defendants' motion to dismiss the complaint filed in these two actions is granted, pursuant to Fed.R.Civ.P. 12(b)(6).

ALL OF THE ABOVE IS SO ORDERED.

---

**13.** Morello may invite the Court of Appeals to do so himself, by filing a Notice of Appeal with the Clerk of this Court, United States Courthouse, Rochester, New York 14614, without payment of filing fees, within thirty (30) days after the entry of judgment in this action.